| UNITED STATES BANKRUPTCY COURT | **FOR PUBLICATION** |
|---|---|
| WESTERN DISTRICT OF NEW YORK | |

-----------------------------------------------------------------

In re

    JOSHUA F. FIALKOWSKI            Case No. 12-12231 K

                Debtor

-----------------------------------------------------------------

OPINION AND ORDER

The question before the Court is arcane and narrow. "May a Chapter 7 Trustee use 11 U.S.C. § 724(b)[1] to administer property that is exempt for bankruptcy purposes, but is also subject to an Internal Revenue Service tax lien (and, in this case, a levy as well)?"

The Debtor argues a much broader proposition. He argues that if a Debtor files a Chapter 7 Petition and is allowed an exemption as to property that is subject to an IRS lien (and, in this case, a levy), then the exemption places the property outside the 11 U.S.C. § 541 estate, and thus outside the Trustee's reach under § 724. In other words, he argues that the matter solely rests between such debtor and the Internal Revenue Service because the collateral is exempt (in this case <u>fully</u>- exempt) but subject to the tax lien: The interests of other creditors are of no moment.

---

[1] In pertinent part, the statute states "property in which the estate has an interest and that is subject to a lien that is not avoidable under this title . . . and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed - - (a) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien; (2) second, to any holder of a claim of a kind specified in § 507(a)(1)(c) or § 507(a)(2) . . . to the extent of the amount of such allowed tax claim that is secured by such tax lien; (3) third, to the holder of such tax lien , to any extent that such holders allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection; (4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien ; (5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claims secured by such tax lien is not paid under paragraph (3) of this subsection; and (6) sixth, to the estate."

The Court declines the invitation to expand the issue beyond that presented by the facts of this case. Expansion would require a degree of interpretation that would (and someday probably <u>will</u>) compel the Court to reconcile one of the deepest mysteries in bankruptcy law as regards debtors who are natural persons. "What are all the consequences of having been allowed an exemption?"[2]

The *res* in this case is small (a small bank account), but the facts of this case are almost ideal for Debtor's counsel. It is a firm that specializes in income tax problems faced by individuals and small businesses, including bankruptcy solutions thereto. The broader question argued by the Debtor is, thus, of great importance to the firm's many present and future clients, but must remain for a more suitable case.

DISCUSSION

For purposes of this case, a decision of the United States District Court for the Eastern District of Michigan is particularly persuasive. In the case of *In re Kerton v. Allard*, 151 B.R. 101, that district court reversed the decision of the bankruptcy court. (That case is emphasized by the Debtor here.) There the Chapter 7 trustee had already sold the realty that was the collateral, and the issue was how to distribute the proceeds. There were mortgage liens as well as a tax lien held by a local taxing authority that objected to that trustee's § 724 intrusion. The district court stated the facts as follows: "The instant appeal arises out of the sale of certain

---

[2]This statement will be explained below.

real property by the Trustee. The property was encumbered by a tax lien in the amount of $8,397.92 and by two consensual liens in the amount of approximately $76,136.54 and approximately $110,000. The liens totaled over $194,000. The property was ultimately sold for $115,000."

The *Kerton* Court then said this:

"The Court is called upon to decide whether, under the circumstances of this case, 11 U.S.C. § 724(b) authorizes subordination of tax liens to administrative expenses <u>incurred only as a result of the sale.</u>"  [Emphasis mine.]

At issue were proceeds of $8,397.92 (the tax lien amount) only.

That court offered the following illustration of how § 724 works. It said:

**Pursuant to § 724(b) the Trustee may pay administrative claims to the extent of tax liens, subordinating the tax liens to the extent of the administrative claims.³ Thus, if the estate has property with a value of $100, a [senior] tax lien of $30 and a [junior] consensual lien of $180, the property is of no value to the estate absent the application of § 724(b) because the value of the secured claims exceeds the value of the property. If, however, the estate has incurred administrative expenses of $20, the Trustee can receive payment of those expenses out of the proceeds of the property through the operation of § 724(b).**

---

³This footnote is mine, not the *Kerton* Court's. It is not just administrative claims that benefit from § 724(b), as is discussed below. No such "other" claims were at issue in *Kerton*, and so that court appropriately simplified its explanation.

> **If the property is sold for $100, the Trustee pays the administrative expenses of $20 first. The administrative claimants stand in the shoes of the tax lienor. The tax lienor is then paid the remainder of his [sic] lien after deducting the amount paid to the administrative claimants. Thus, in this case, the tax lienor would be paid $10. The consensual [junior] lienor is then paid his [sic] claim in full up to the value of the proceeds, in this case $70. The consensual lienor is unaffected by application of § 724(b). Taking second to the $30 tax lien, $70 is all he [sic] would have received anyway.**
>
> **By paying priority administrative claims out of property that is otherwise without value to the estate, § 724(b) relieves the remainder of the estate of the burden of paying those priority claims. Funds from the remainder of the estate that would otherwise have gone to payment of these priority claims are, consequently, free to enhance the payment to <u>general</u> [or certain priority] creditors.** [Underline added.]

Expressing the view that maximizing the estate for the benefit of <u>general</u> (or certain priority) creditors is the essential duty of the Trustee, the court stated that

> **A sale which pays only expenses incurred as a result of the sale does not benefit the estate whatsoever. All of the cases that the court has examined authorizing the sale of property pursuant to § 724(b) are based on the implicit assumption that the estate will benefit. The parties have presented no case, and the court has found none, which explicitly authorizes**

> **the sale of property pursuant to § 724(d) under circumstances which provide no benefit to the estate. Accordingly, the court holds that, by negative implication, benefit to the estate is a *sine qua non* of proper subordination under § 724(b), and that in this case, the § 724(b) subordination was improper . . . Because the court holds that subordination pursuant to § 724(b) is not proper when the sale proceeds do not go to pay any pre-existing and outstanding administrative claims [or priority unsecured claims], the court reverses the . . . opinion of the bankruptcy court . . . and orders that the $8,379.92 be paid to the [taxing authority].**

It can be seen that the issue of bankruptcy exemptions was not presented at all in the above case. Rather, the real estate was administered solely for the benefit of secured creditors. Application of § 724(b) would operate solely to the detriment of the local taxing authority because the proceeds of the tax lien - - which was superior and paramount to all other liens on the property except for the fact of a bankruptcy petition and the reach of § 724 - - would be wiped out in payment of the administrative expenses <u>incurred solely in the administration of its collateral.</u> That would benefit only that trustee and his appointees (and the junior liens, if they preferred sale by the trustee over pursuing their non-bankruptcy rights.[4])

In the case presently at Bar, to permit the Trustee to administer the property under § 724(b) <u>might</u> disadvantage the Debtor who has been allowed a cash exemption in the full

---

[4] It is often beneficial for a lienholder to let a bankruptcy trustee sell its collateral, instead of incurring the expense of state-law foreclosure and sale.

amount of the subject bank account. The Court uses the term "might" because the matter of whether the Debtor will ever gain the use of the money (given the tax lien and levy) depends on the outcome of the Debtor's ongoing efforts to resolve his problems with the Internal Revenue Service. It is true that if the Trustee is permitted to administer the property under § 724(b), the Debtor's obligation to the Internal Revenue Service will be reduced by the amount of cash remaining after payment of administrative expenses because the tax lien represents a non-dischargeable claim that will be reduced by the amount of "a net" payment by the Trustee. (Read on as to possible § 507 claims that have not yet been filed.) But if the Trustee is not permitted to administer the bank account, the full amount thereof would be available to the Debtor in his negotiations for a complete resolution of his Internal Revenue Service problems, and no portion of that money will have "evaporated" in payment to the Trustee and his professionals.[5]

The Internal Revenue Service appeared in the present matter but took no position. Perhaps it took no position because this is a small bank account, and the IRS would rather wait for a case of considerably greater moment before it weighs in on the issue at Bar. Consequently, this dispute is strictly between the Trustee and the Debtor, and any dispute between those two exists only because the Debtor has been allowed an exemption in this over-encumbered bank account. (The Debtor acknowledges that his exemption is "trumped" by the tax lien.)

As noted at the outset, the broader holding that the Debtor requests would implicate profound matters. Why is it that 11 U.S.C. § 724(b), does not speak in terms of

---

[5]Because this is cash in the bank, it is likely that the only administrative expenses would be the Trustee's commissions and an attorney's fee for the preparation of a suitable order to compel the delivery of the funds by the banks to the Trustee despite the levy.

"avoidance" of the tax lien? Subsection (a) of § 724 does speak of "avoidance" as to a different type of tax lien. Whenever "avoiding powers" are involved, 11 U.S.C. § 551 expressly preserves an avoided lien for the benefit of the § 541 estate. Is that difference meaningful?

Further, what is the Court to make of the numerous cases that say that "exempt property" is no longer "property of the estate" after the exemption has been claimed and has gone unopposed?[6] This is important because § 724(b) applies only to "property in which the estate has an interest and that is subject to a [tax lien] . . .". That, of course, is the crux of the Debtor's broader argument.)

The reason that the Court will await a proper case to address that broader argument is because the full scope of § 724(b) would best be understood in a case in which there are <u>pre-petition</u> priority unsecured claims that would benefit from the administration of the collateral. That was stated in the legislative history to § 724(b) to be one of its primary intended purposes. Or where there are other lien holders encouraging the Trustee's administration of the collateral, or, where there are other administrative expenses to be paid, expenses that are <u>not</u> related to the administration of the subject property. Or some combination or all of the above.

CONCLUSION

As noted above, 11 U.S.C. § 724(b) does not use language of "avoidance." Consequently, the Trustee needs no permission from the Court to implement § 724(b). This

---

[6] See, for example, *In re Elia,*, 198 B.R. 588 (Bankr. Ariz. 1996).

dispute has come before the Court only because it began when the Trustee filed a motion seeking an order directing the Debtor to turn the money over to the Trustee under 11 U.S.C. § 542. That prompted a motion from the Debtor seeking to compel the Trustee to abandon the "exempt" bank account under 11 U.S.C. § 554(b).[7]

The Trustee's motion under § 542 is denied. The Debtor's motion under § 554 is granted, not because the exemption is dispositive, but rather because (1) the exemption gives the Debtor standing to raise the question that the IRS did not raise against § 724 subordination, and (2) this case seems not to involve any other creditor who would be a beneficiary of the Trustee's exercise of § 724(b) powers. That said, the effect of the granting of the Debtor's motion must be stayed until the Chapter 7 case is ready to be closed. This is because 11 U.S.C. § 726(a)(1) permits late filing of some of the types of pre-petition priority unsecured claims that would be beneficiaries of § 724(b). This case is only four months old. It is not known to the Court (and perhaps not known to the Trustee) whether there are other assets to be administered. Consequently, there has been no date set for the filing of proofs of claims, and it cannot be known yet all the claims that might benefit from § 724(b) administration of the bank account by the Trustee.

For now, this matter is continued to **March 6, 2013 at 10:00 a.m.**, for a report from the Trustee as to whether there has been any change in these regards.

If there has been no change, then the Court will cause a notice to issue describing

---

[7]The reader will recall that in the Michigan case discussed above, the matter came before the court on the taxing entity's opposition to the trustee's proposed distribution, which proposed to implement the subordination of that tax lien.

this ruling and its effect upon potential § 724(b) beneficiaries who otherwise have received no notice of these contested matters and how they might be affected thereby.

Final judgment on these matters, and, therefore, the beginning of the time to appeal today's ruling, shall await the results of such notice if such notice becomes necessary. In the meantime, this is an interlocutory order in this Court's view, not subject to appeal

SO ORDERED.

Dated:        Buffalo, New York
              December 3, 2012

                                                            s/Michael J. Kaplan
                                                        _____
                                                                     U.S.B.J.

Case 1-12-12231-MJK    Doc 34    Filed 12/03/12    Entered 12/03/12 15:24:53    Desc Main
Document        Page 9 of 9